UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES I. WYATT,<br><br>          Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>          Defendant. | Civil No.13cv1972 WQH (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>(Dkt. Nos. 12 and 15.) |

James I. Wyatt (Plaintiff) brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Defendant) denying his claim for disability insurance benefits. (Dkt. No. 1.) This case is referred for a Report and Recommendation on the parties' cross-motions for summary judgment. *See* 28 U.S.C. § 636(b)(1)(B). After careful consideration of the moving papers, the administrative record, and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that Defendant's cross-motion for summary judgment be **GRANTED**.

///

///

///

## I. Background

### A. Evaluation of a Disability Under the Social Security Act

To qualify for disability benefits under the Social Security Act, an applicant must show that he or she cannot engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least twelve months. 42 U.S.C. § 423(d). An individual claiming disability must prove he was permanently disabled or subject to a condition which became disabling prior to his last insured date. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The Social Security regulations establish a five-step sequential evaluation procedure for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

First, it must be determined whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If not, the second step is to determine whether the applicant is suffering from a "severe" impairment within the meaning of the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairment is severe, the third step is to ascertain whether it meets or equals one of the "Listing of Impairments" in the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, he or she will be found disabled. *Id.* If the impairment does not meet or equal a Listing, it is then determined whether the applicant retains the residual functional capacity (RFC) to perform his or her past relevant work (step four). 20 C.F.R. § 404.1520(a)(4)(iv). If the applicant cannot perform past relevant work, step five considers whether the applicant can perform any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. 20 C.F.R. § 404.1560(c)(2); *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.* In making the determinations, "the ALJ

[Administrative Law Judge] has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (alteration in original).

### B. Procedural History

Plaintiff James Wyatt applied for Social Security disability benefits on October 20, 2009. AR 27. His application was denied on January 11, 2010, and that decision was affirmed on request for reconsideration on May 27, 2010. AR 86, 93. Plaintiff then requested a hearing by an Administrative Law Judge (ALJ). AR 100. Based on testimony given at the hearing and documentary evidence in the record, the ALJ issued a decision denying Plaintiff disability benefits. AR 23-42. Plaintiff's application for review by the Social Security Administration Appeals Council was denied, finalizing the ALJ's decision. AR 6. Plaintiff now seeks judicial review of that decision. (Dkt. No. 1.)

### C. Relevant Documentary Evidence

Plaintiff suffered a workplace back injury in 2005 while lifting gas canisters. AR 318. He reported to the emergency room and received lower back injections for pain relief and was discharged. *Id.* Following physical therapy, he returned to his normal work duty for three years until back pain forced his leave on temporary total disability. AR 318-19. From 2006 to 2009, Plaintiff's primary doctor was Dr. Bruce Van Dam. AR 319, 444. Upon determining Plaintiff would require a surgery he no longer performed, Dr. Van Dam recommended Plaintiff obtain a new primary treating physician. AR 444. Plaintiff chose neurosurgeon Dr. Lokesh Tantuwaya. AR 318. He underwent an unsuccessful back surgery on January 4, 2010, and a repeat back surgery on December 8, 2010. AR 335, 579. Plaintiff's ability to work following a recovery period from the second surgery is now disputed.[1]

///

---

[1] Plaintiff underwent psychiatric review by Dr. Khan in January 2010. AR 305. Dr. Khan found Plaintiff had non-severe depression that did not significantly decrease the ability to function. *Id.* Plaintiff's psychiatric health is not at issue here and was not raised in his complaint. (Dkt. No. 1.)

1. Dr. Van Dam: Primary Treating Physician, 2006-2009

Dr. Van Dam was Plaintiff's primary treating physician through 2009, prior to both back surgeries. The diagnosis in a February 2009 report was disk herniation at L3-4.[2] AR 452. As the treating physician, Dr. Van Dam noted Plaintiff was in severe pain and prescribed a variety of narcotic analgesics such as Percocet and Oxycontin. *See, e.g.,* AR 444, 452. In April 2009, Dr. Van Dam informed Plaintiff he would no longer provide treatment.[3] AR 445.

2. Dr. Tantuwaya: Primary Treating Physician, 2009-2011

Dr. Tantuwaya was Plaintiff's treating physician for both back surgeries and his medical reports were given significant weight in the ALJ's decision to discredit Plaintiff's testimony after April 12, 2011. AR 36. Upon assuming care for Plaintiff in 2009, Dr. Tantuwaya diagnosed Plaintiff with L3-4 disc protrusion with radiculopathy.[4] AR 467. His recommended treatment was L3-4 laminectomy and discectomy.[5] *Id.* The diagnosis and treatment plan was consistent with Dr. Lane's, the non-treating examining physician.

The first surgery, a left hemilaminotomy L3-4 was performed on January 4, 2010. AR 540. Plaintiff initially reported reduced leg and back pain, and was walking thirty

---

[2] Disk herniation is commonly referred to as a "slipped disc", a defect in the disc's outer wall that allows disc material into the spinal canal. NYU Langone Medical Center, *Lumbar Herniated Disc*, http://hjd.med.nyu.edu/spine/patient-edu cation/spine-problems/back-and-leg-pain/lumbar-herniated-disc (accessed June 11, 2014). L3-4 identifies which lumbar vertebrae are affected. *Id.*

[3] Dr. Van Dam's correspondence indicated he was no longer able to perform spinal surgery or provide patient treatment because of a physical disability. AR 444-45.

[4] Lumbar radiculopathy is the compression or inflamation of the spinal nerve root that may cause pain, numbness, or weakness. NYU Langone Medical Center, *Lumbar Radiculopathy*, http://www.med.nyu.edu/content?ChunkIID=8864 86 (accessed June 11, 2014).

[5] Laminectomy is a surgery to remove the vertebra surrounding the spinal cord. NYU Langone Medical Center, *Laminectomy*, http://neurosurgery.med.nyu. edu/patients/common-terms/common-terms-k-m (accessed June 11, 2014). The similar laminotomy procedure removes only a portion of the vertebra. *Id.* Discectomy is a surgery that removes part of a protruding disc to relieve pressure on the affected nerves. NYU Langone Medical Center, *Invertebral Discectomy*, http://www.med.nyu.edu/content?ChunkIID=112180 (accessed June 11, 2014).

minutes daily. AR 530, 535. However, the pain subsequently worsened in his leg and there was no improvement in back pain. AR 525, 530. Dr. Tantuwaya determined the first surgery to be unsuccessful and requested authorization for a revision surgery of "lumber laminectomy at L3-4" with decompression and fusion. AR 511.

The second surgery performed on December 8, 2010, was a left L3-4 fusion with a repeat laminectomy. AR 574, 582. Two weeks after surgery, Plaintiff reported no improvement in back pain and was walking just fifteen minutes daily. AR 579. However, at a follow-up exam one month later, he reported improvement of back pain and reduced his use of prescription pain medication from two pills per dose to just one. AR 574. At a February 15, 2011, exam, Plaintiff reported more improvement with leg and back pain and was walking thirty minutes at a time. AR 569. He was still experiencing pain in his left shin and at the incision wounds. *Id.*

At an exam on March 15, 2011, Plaintiff reported reduced pain in the leg and back, rating it a three out of ten pain level. AR 564. Dr. Tantuwaya determined Plaintiff was in stable condition and ordered continued physical therapy and use of a bone stimulator. AR 564, 567. On April 12, 2011, Plaintiff reported reduced, but still present, leg and back pain. AR 559. He also continued physical therapy for strength building and walked thirty minutes daily. *Id.* At this exam Dr. Tantuwaya approved a return to modified work that excluded "lifting more than 30 pounds or repetitive or prolonged bending, twisting, or stooping at the waist level." AR 562.

The final post-operative checkup in the record was on May 17, 2011. AR 554. Plaintiff reported more lower back pain, and that his medication only works for four to five hours. *Id.* Plaintiff also expressed interest in returning to some form of work, but different from his previous occupation. *Id.* Dr. Tantuwaya encouraged continued walking as exercise and use of the external bone stimulator. AR 557.

3.   <u>Dr. Lane: Non-treating Examining Physician, 2009-2011</u>

Dr. John Lane's medical reports from 2009 through 2011 were in the context of

///

agreed medical evaluations as a non-treating doctor.[6] *See, e.g.,* AR 413, 429. In the initial 2007 evaluation he diagnosed Plaintiff with aggravation of lumbar degenerative disc disease, recommending exercise and joint injections for pain. AR 414. Following multiple evaluations in 2009, Dr. Lane determined that non-operative treatments including core-strengthening exercises and injections for pain management were not successful. AR 418, 426. His revised diagnosis indicated a herniated disc with left L4 radiculopathy. AR 426. The updated treatment recommendation was a surgical procedure of decompression and lumbar fusion with discectomy at the L3-4 level. *Id.*

The next evaluation in May 2010 was approximately four months after Plaintiff's first back surgery. AR 429. Plaintiff reported increased pain and Dr. Lane indicated the surgery had "a very poor result." AR 433. He agreed with Dr. Tantuwaya's request for a repeat procedure with lumbar decompression and fusion, absent an MRI scan finding bone fragmentation. *Id.*

Dr. Lane's most recent evaluation was on September 21, 2011, approaching one year removed from the second (repeat) back surgery. AR 603. Plaintiff reported constant mild back and leg pain with occasional sharp pains. AR 612. Dr. Lane determined back fusion was not complete and may even require additional surgery. AR 615. Plaintiff reported "substantial problems" with routine activities such as dressing, sitting, walking and sleeping. *Id.* Dr. Lane found Plaintiff had reached permanent and stationary status and was unable to return to his usual occupation. AR 616-17.

### D. Hearing Testimony

Plaintiff's hearing before the ALJ took place in May 2011, with appearances by Plaintiff, his counsel Alex Boudov, and vocational expert John Kilcher. AR 45. The ALJ questioned Plaintiff about his daily routine and recovery following the second surgery. AR 59-60. Plaintiff testified he iced his back and used a bone stimulator daily, and was able to walk two to three times per week for fifteen to twenty minutes, though Dr.

---

[6] Dr. Lane first evaluated Plaintiff regarding a separate claim for benefits on October 1, 2007, stemming from a work injury that occurred in May 2005. AR 414, 604-05.

Tantuwaya recommended walking exercise daily. AR 62. Plaintiff also testified he had trouble sleeping because of the pain, and that his prescription pain medication was only somewhat effective. AR 63-65.

Mr. Kilcher discussed Plaintiff's previous work experience as a bellman, cleaner, and truck driver, and opined that he could no longer perform that type of past work. AR 68-70. He determined the past work had a RFC of medium and above, which exceeded Plaintiff's current light RFC designation. AR 70. Mr. Kilcher further identified light RFC jobs that exist in the San Diego area and nationally in significant numbers such as assembler, packager, and production inspector. AR 70-72. In response to a hypothetical posed by Plaintiff's counsel, Mr. Kilcher conceded that more than one absence per month would not be acceptable for the suggested light RFC jobs. AR 72-73.

### E.    ALJ's Written Decision

The ALJ issued a written decision on September 16, 2011. AR 23-42. He determined Plaintiff met the insured status requirements through December 31, 2013, and that he had not engaged in substantial gainful activity since July 10, 2008. AR 30. He also found that between July 10, 2008, and April 11, 2011, Plaintiff was disabled with a severe impairment for "degenerative disc disease of the lumbar spine" and a herniated disc. 20 C.F.R. § 404.1520(c); AR 31. During that time he met the listing for a spine disorder with nerve root damage. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04(a); AR 31. Also, the ALJ found the injury could "reasonably be expected to produce the alleged symptoms" but determined Plaintiff's testimony only credible up to April 11, 2011. AR 33-35. Beginning April 12, 2011, the ALJ found Plaintiff's testimony *not* credible (to the extent inconsistent with the RFC) and that he had the RFC to perform light work without standing and walking, or sitting for more than six hours in an eight hour day. AR 35. The light duty also excluded climbing ladders, rope, and scaffolding, "occasional for all remaining postural activities, avoid concentrated exposure to temperatures, both cold and heat, vibration, workplace hazards, such as dangerous machinery and unprotected heights." *Id.*

The ALJ noted that at the March 15, 2011, exam Plaintiff reported his pain level to be just a three out of ten, far less than before the second surgery. AR 36. The same exam also found a full five out of five on lower extremity motor strength. *Id.* The ALJ further discussed the April 12, 2011, exam when Plaintiff said he had improved leg and back pain and was walking thirty minutes each day. *Id.* He also noted Dr. Tantuwaya found Plaintiff to be stable, no longer disabled, recommended an exercise program, and approved return to modified work. *Id.* The recommended modified work was to lift "no more than 30 pounds or repetitive or prolonged bending, twisting, or stooping at the waist." *Id.* The ALJ discussed his further accommodation of these limitations with a light work RFC assessment. *Id.*

The ALJ's review of the May 17, 2011, exam acknowledged Plaintiff reported lower back pain, and "tingling and numbness" in the left leg with prolonged standing but no pain. *Id.* The ALJ also concluded that because Plaintiff stated the pain medication worked for four to five hours that the pain was "no longer disabling." *Id.* The ALJ further noted that after April 2011, Plaintiff desired to work and that Dr. Tantuwaya determined he was capable of modified work. *Id.* Lastly, the ALJ noted that the treatment recommendations following the second surgery were relatively conservative, indicating improvement, and that Plaintiff's condition was no longer disabling. AR 37.

The ALJ concluded that Plaintiff is unable to perform past relevant work because his former jobs were classified as medium to heavy assessments. *Id.* But, the ALJ found Plaintiff capable of RFC consistent with light work. *Id.* Based on Mr. Kilcher's testimony on the availability of unskilled light work, the ALJ determined Plaintiff has been capable of obtaining work that "exists in significant numbers in the national economy" since April 12, 2011. AR 38. Therefore, he made the determination of not disabled, beginning April 12, 2011. *Id.*

## II.   Analysis

### A.   Standard of Review Regarding Substantial Evidence

The Social Security Act provides for judicial review of a final agency decision

denying a claim for disability benefits. 42 U.S.C. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Id.*; *Batson,* 359 F.3d at 1193. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld. *Batson*, 359 F.3d at 1193. Further, when medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are the exclusive functions of the agency. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

**B.     Assertion of Error: Rejection of Plaintiff's Subjective Testimony**

In challenging the ALJ's denial of benefits, Plaintiff argues that the ALJ erred in rejecting his subjective testimony. (Dkt. No. 12 at 5.[7]) He claims the ALJ improperly "isolated the record" by noting that Plaintiff's pain level had reduced to three out of ten. *Id.* at 7. Further, he argues that his subjective testimony is supported by Dr. Lane's classification of his condition as "failed back syndrome" and the ALJ's acknowledgment that Plaintiff's back had not yet fused. *Id.* Plaintiff also alleges the ALJ did not offer any other reason to reject the testimony such as inconsistent testimony or conduct. *Id.*

A claimant's subjective symptoms must be considered in a disability evaluation. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). In deciding whether to credit a claimant's testimony about subjective symptoms or limitations, the ALJ must engage in a two-step analysis. *Batson*, 359 F.3d at 1196; *Smolen*, 80 F.3d at 1281. Under the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms. *Batson*, 359 F.3d at 1196; *Smolen*, 80 F.3d at 1281. In this case, the ALJ found that Plaintiff's underlying impairments could produce his alleged symptoms, so this

---

[7] References to page numbers in the parties' submissions refer to those assigned by the ECF system.

element is not an issue. *See* AR 33. If this first element is satisfied, and there is no affirmative evidence that the claimant is malingering, then the ALJ must determine the credibility of the claimant's subjective complaints.

In assessing the credibility of the claimant's subjective complaints, the ALJ may consider such factors as the claimant's reputation for truthfulness, any inconsistencies in the claimant's statements, and the claimant's daily activities. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Smolen*, 80 F.3d at 1284. He may also consider the objective medical evidence in the record along with Plaintiff's treatment history. *Smolen*, 80 F.3d at 1284. The ALJ may reject the claimant's testimony about the severity of symptoms as long as he gives specific, clear, and convincing reasons for doing so. *Batson*, 359 F.3d at 1196; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834. The ALJ's reasons for rejecting Plaintiff's subjective testimony must be specific enough to allow this reviewing Court to conclude that "the ALJ did not arbitrarily discredit [Plaintiff's] testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (alteration in original). Where the claimant has proven a combination of impairments that would result in some degree of limitation in his activity, and there is no evidence of malingering, the Commissioner must provide "clear and convincing" evidence in order to disregard the claimant's testimony on subjective symptoms. *Lester*, 81 F.3d at 834. If the ALJ's credibility finding has substantial support in the record, this Court will not second guess the opinion. *Thomas v. Barnhart*, 278 F.3d 947, 959.

Plaintiff alleged that he has leg pain and numbness after standing for twenty minutes, and reported being unable to lift more than five to ten pounds. AR 59, 554. He also testified he had difficulty sleeping, requiring two hour naps during the day to rest and elevate his legs. AR 64, 65. The ALJ reviewed the record regarding Plaintiff's pain, physical ability, improvement from surgery, and ability to work, and identified evidence in the record undermining Plaintiff's complaints. AR 31-38.

The medical records support the ALJ's findings. Plaintiff's treating neurosurgeon, Dr. Tantuwaya, based his opinions on multiple evaluations following Plaintiff's second surgery. Plaintiff reported a relatively low pain level of three out of ten, and tested five out of five on lower extremity motor strength. AR 36; AR 564-65. This was followed by a subsequent exam when Plaintiff reported improvement with pain and was walking thirty minutes daily. AR 559. At this appointment, Dr. Tantuwaya opined Plaintiff was stable, not disabled, recommended exercise, and approved a return to work with limitations. AR 562. Plaintiff expressed that his pain medication worked for four to five hours and that he desired to work. AR 554. The ALJ also observed that the back treatments had become more conservative with use of exercise and a bone stimulator, but did not require any additional surgery. AR 37; AR 557. Plaintiff's hearing testimony about pain severity and limited activity appear to contradict his reports to Dr. Tantuwaya of low pain levels and daily walking exercise. *Compare* AR 59-62, *with* AR 559, 564-65. Dr. Tantuwaya's opinion of Plaintiff's recovery also undermines Plaintiff's testimony. Specifically, Dr. Tantuwaya approved modified work in both the March and April appointments. AR 557, 562.

Consideration of Plaintiff's daily activities is proper when making an evaluation of symptoms, including pain. *See* 20 C.F.R. § 404.1529(c)(3)(i). Differences between Plaintiff's allegations and his conduct qualifies as substantial evidence that may be used in a credibility determination. *Light v. Soc. Sec. Admin,* 119 F.3d 789, 792 (9th Cir. 1997). Notably, Plaintiff reported to Dr. Tantuwaya that he performed core strengthening exercises and "walk[ed] 30 minutes on his treadmill at home every day." AR 559 (alteration in original). But, the ALJ asked Plaintiff about Dr. Tantuwaya's recommended walking exercise and Plaintiff responded "I can't do that every day." AR 62. Considering these inconsistent statements are less than one month apart, they constitute evidence showing the ALJ "did not arbitrarily discredit testimony." *Orteza*, 50 F.3d at 750.

Plaintiff's motion also calls attention to the September 21, 2011, agreed medical evaluation by Dr. Lane. Plaintiff relies in part on this evaluation to support the credibility

of his testimony. (Dkt. No. 12 at 7.) This evaluation postdated the decision of the ALJ but was considered by the Appeals Council. *See* AR 6, 24, 615**.**

The legal standard is unchanged by the introduction of new evidence. "If the ALJ's credibility finding *is* supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (emphasis added). Judicial review determining the existence of substantial evidence applies to the "final decision of the Commissioner." 42 U.S.C. § 405(g). The Appeals Council's denial of a request for review constitutes a final decision. *See* 20 C.F.R. §404.955; *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). "[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes,* 682 F.3d at 1159-60; *See also Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993)) (reasoning that new evidence is part of the administrative record despite an Appeals Council denial of review because the Council considered it in reaching its decision). However, a medical opinion is less persuasive when it is given after an adverse decision by the ALJ. *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) ("After-the-fact psychiatric diagnoses are notoriously unreliable."); *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

This Court considered the newly submitted medical report, but finds it unpersuasive. At the September 21, 2011 medical evaluation, Dr. Lane determined Plaintiff's spine had not fully fused and diagnosed "failed back syndrome."[8] AR 615.

---

[8] Failed back syndrome is a medical term of art defined as chronic back or leg pain, usually following surgery. NYU Langone Medical Center, *Failed Back Surgery Syndrome*, http://pain-medicine.med.nyu.edu/patient-care/conditions-we-treat/failed-back-surgery-syndrome (accessed June 11, 2014). This is not necessarily inconsistent with Plaintiff's RFC and ability to work. E*.g.,Franco v. Colvin*, No. 1:12-CV-01267-SMS, 2014 WL 790912, at *8 (E.D. Cal. Feb. 26, 2014) (noting the state agency examining doctor found claimant capable of modified work despite a diagnosis of failed back syndrome following a laminectomy, discectomy and fusion).

But, Plaintiff's report of "substantial problems bathing, dressing, standing, [and] sitting" is inconsistent with his previous statements and Dr. Tantuwaya's opinion. AR 562, 569. Specifically, Plaintiff's statements of walking 30 minutes daily and his doctor's approval to return to modified work contradict the medical report that followed the ALJ decision. AR 559, 562, 569. Like *Vincent*, the medical reports of Dr. Tantuwaya and Dr. Lane prior to the ALJ decision are more persuasive than the "after-the-fact" evidence submitted to the Appeals Council. *Vincent,* 739 F.2d at 1395.

The ALJ offered several clear and convincing reasons to justify his determination that Plaintiff's subjective description of his limitations and pain was not credible. He noted inconsistencies between Plaintiff's own statements, his daily activities, and Dr. Tantuwaya's medical opinion and reports. *See Tonapetyan*, 242 F.3d at 1148. Although there is some evidence that Plaintiff has some limitations and pain, the ALJ's finding has substantial support in the record. Accordingly, Plaintiff cannot sustain an objection to the opinion on this ground.

**III.   Conclusion**

Based on the preceding discussion, this Court concludes that the ALJ's denial of benefits is supported by substantial evidence and is free of legal error. Therefore, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment, (dkt. no. 12), be **DENIED** and that Defendant's cross motion for summary judgment, (dkt. no. 15), be **GRANTED**.

The undersigned submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than **June 30, 2014,** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 7, 2014.** The parties are advised that

failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: June 16, 2014

*(signature)*
Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court